The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit And we're prepared to hear Hulbert v. Pope, and let's hear from counsel for Mr. Pope. Thank you, and may it please the Court. Sgt. Pope is entitled to qualified immunity for the remaining claims pending against him for at least three reasons. First, the District Court erred when it wrongly denied summary judgment, relying solely upon a dispute of fact, and that dispute of fact was immaterial to the issue of his entitlement to qualified immunity. Second, the District Court erred when it failed to consider the alternative bases upon which Sgt. Pope had probable calls, or at least arguable probable calls, to arrest the Hulbert brothers, and in so doing denied him his entitlement to qualified immunity. And third, with respect to Kevin Hulbert's claims, in February 2018, in this circuit, the right to record law enforcement officers when you are the subject of repeated orders to move for safety reasons that have been rejected and denied, you did not have a clearly established right under the First Amendment in this circuit at that time. With respect to the first argument that the District Court relied solely on an immaterial fact in its qualified immunity analysis, it reached this point after first concluding that Sgt. Pope had issued a content-neutral order that left open ample alternative channels for communication. When it was reviewing whether or not that – That's not sufficient, right? Content-neutral and sufficient alternative is you also have to have an important governmental interest. Are you arguing that police officers can tell anyone they want to move off a public sidewalk? I'm not saying that. I'm not arguing that. What's the important government interest, and why isn't there a factual dispute over whether there was one? So the District Court did two things to reach that conclusion. It first found that there was, as a broad matter, right, that there's no doubt that the government has a, and I'll quote, an interest in maintaining the safety order and accessibility of its streets and crosswalks. Later, after going through the colloquy of, I've reviewed all of the facts and inferences in the light most favorable to the plaintiff, I quote, she found that although he recognized no apparent immediate threat to public safety, based upon discussion with dispatch and Sgt. Donaldson, I note anecdotally that as his supervisor, Sgt. Pope believed there was a potential safety concern caused by the Hallward's demonstration on the sidewalk next to the roadway. And in his report, his arrest report, you see all of the issues that led to that conclusion that were encaptured by that. But under, okay, but at least as a matter of Fourth Amendment doctrine, what the officer subjectively believed is irrelevant, right? And that sometimes works to the benefit of the officer, and it sometimes works to the detriment of the officer. Correct. So, okay, so it's not that the government can order anybody off a public sidewalk anytime they want for no reason whatsoever. Correct. It's also not right that an officer can say, well, I subjectively believed I needed to move a person off a public sidewalk for safety reasons. That's not a Fourth Amendment get-out-of-jail-free card, right? I don't disagree with that, and that's not what happened here. Okay, but so then the district court says, okay, now that said, sometimes government officials can order you off a public sidewalk for safety reasons. Totally agree with that. And the district court says, you know, in order to figure out whether this is one of the situations where they can or whether they can't, I need to resolve certain facts. Why aren't those facts then material? Well, so she went through and identified all of those factors that appeared in Sgt. Pope's report. It was dark. We were at a busy and dangerous intersection that had had two pedestrians struck by vehicles in the prior eight months and six complaints by other pedestrians that vehicles failed to stop for them. It was right before the legislative session in Annapolis was getting ready to begin again, so the area was flooded with lobbyists and legislators, and it was much busier than it typically is. And that there were eight people on the sidewalk with large signs, and with that totality of circumstances, Sgt. Pope believed, and in discussing with the supervisor, believed this created a safety issue, that he needed to take advanced action to make sure it didn't become a compromised issue and that people would be injured. Were the protesters on the sidewalk or were they on the walkway, a crosswalk, or walk across the street? Well, that's where the dispute of fact is that the lower court relied upon it. So they did walk on the sidewalks and on the crosswalks. The lower court found there was a dispute as to whether or not they used the crosswalks, and that there was a possibility that they only used the sidewalks. Because your view is that even had it been the sidewalks, there was still a public safety interest involved, or the size of the protest and everything, and the location and the traffic and everything would still establish a legitimate state interest. Absolutely. And I add to that that the discussion of whether they were in the crosswalks does not appear in Sgt. Pope's report. He does not identify that as one of the reasons he made the arrests here, or I would say gave the order that ultimately led to the arrests. I mentioned it in a footnote in my motion for summary judgment in my statement of facts. It doesn't appear in argument anywhere. It doesn't appear in Sgt. Pope's report anywhere. Wait, so you're saying the district court erred in relying on something that you briefed? I mentioned it in a footnote in the statement of facts that they were in. In a statement of undisputed material facts in support of a summary judgment motion? Correct, but I never argued that it was... So the district court should be reversed because she relied on a fact that wasn't in his report but was in your brief? Well, correct, because it had nothing to do with the reasons for which he decided to make the order and then subsequently arrest them. It had no play in his actions taken in this case, and it doesn't matter how you resolve it, right? You still have a litany of other safety issues that he was protecting public safety against, he was guarding against. Here's the other problem for me, is that the Fourth Amendment doesn't care about what's in the officer's heart, but the First Amendment sometimes does care about what's in the officer's heart. Do you agree that move because the lieutenant governor wants you to move is a First Amendment violation? I do. That's not what happened here either, and the district court also rejected that theory offered by the plaintiffs because the arresting officer had no knowledge of that at the time he gave the orders and made the arrests. Well, he just knows that his boss told him to do it. So if his boss told him to do it because the lieutenant governor... Then they should have sued his boss. They didn't. They sued his boss? No, they only sued Sergeant Pope. If they believed that was a different theory of liability that they could pursue, then that's how they should have pursued it because it had nothing to do with the information available to Sergeant Pope when he took action in this case. No, there would be two things that would raise serious First Amendment concerns, and one is if they had been arrested just because of their protest. But as I understand it, they were arrested because they declined to follow an order to move, and that was the reason for the arrest. It didn't have anything to do with the content of the message or the protest or whatever. And the other thing from the standpoint of the First Amendment was that the officer didn't just say disperse, he said move back a few feet until you're in the lawyers' mall. And so it may not be the alternative form of communication. It may not have been ideal, but it wasn't as if the officer was trying to shut it off. He wasn't arresting these people on the basis of a First Amendment, on the basis of some objection to their message or on the basis of their protest. He wasn't arresting them for that reason, and he wasn't trying to shut off what they said. These are two critical facts, and I don't see them as being particularly disputed. Correct, yeah. Sergeant Pope didn't know their message at the time he gave his orders and at the time he made the arrest. He had no clue what their message was. And you're right, too, that the sidewalk, I had used Google Maps to measure it. It was maybe about 15 feet. They were standing in the middle of the sidewalk, so he was asking them to move six, seven, eight feet back. And actually the rest of the people who weren't arrested continued their demonstration six, seven, eight feet back from where they had originally set up. Why was there probable cause to arrest them for obstructing the sidewalk? So the Department of General Services, which is the principal department of state government that oversees the Maryland Capitol Police, has jurisdiction among certain state grounds as defined in statute. No, I mean what were they doing that would supply probable cause to arrest them for obstructing the sidewalk? Well, to clarify, we're talking about Comar, which is the Code of Maryland Regulations. Right. And then we have 04050103A5B, which is the regulatory framework that provides the Maryland Capitol Police to arrest certain persons under certain circumstances. And here he thought that there was probable cause, or at least arguable probable cause. Right, and I'm asking on what basis? That they were obstructing the sidewalks. Eight people standing in the middle of a 15-foot wide sidewalk. What is the probable cause to believe? I mean, the district court says, nothing in the video or the testimony before the court suggests pedestrians' efforts to use the sidewalk were frustrated by this group in any way. And I think that's— Which seems clearly right to me, so I don't understand how they're obstructing the sidewalk. I think that the district court and the plaintiffs' appellees in this case have been relying heavily on, in the moment, was there an issue. And that was never what Sergeant Pope's— I don't know how I can be arrested for the possibility that I might in the future obstruct the sidewalk. Well, and I guess that's what I'm getting to, right? So he goes out and gives them these orders because he anticipates threats to public safety. And sees when— —was for failure to obey officer's order. Is that right? So he was—yes. He initially gave them a citation for failure to obey a lawful order, a violation of 10-201 of the criminal law article. He had wanted to give them the citation under the Comar regulation, couldn't locate the correct citation when he had them and released them. The day after, he found them and gave them those citations. In addition to the trespass charge that the state's attorney's office had long advised that office to use when arresting people under these circumstances. The Comar regulation has never been subject to any appellate review or any appellate decision about the scope and contours of that right. Sergeant Pope was enforcing it plainly as read. He sees this group believes— Again, I don't understand. I really mean in a real-world what sense are eight people standing on a 15-foot sidewalk obstructing the sidewalk? Sergeant Pope nevertheless saw them— Just assert that. You have to tell me how a reasonable person could possibly think that. Well, if there is a compromise or a potential compromise to public safety, that is an obstruction that can be protected against in advance and to protect against and guard against public safety. So if the area is not only busy and dangerous, it's about to get busier and more dangerous, that is an obstruction of the walk that Sergeant Pope could reasonably rely on or in his view rely on when he made the arrests here. I'm running very low on time. I'd like to move on to some other arguments. And I think I've briefed the probable cause or arguable probable cause fairly sufficiently. I expect that the third question is the one this court is likely more interested in, which is whether or not the right to record a law enforcement officer under the circumstances presented in this case was clearly established in this circuit in February 2018. The— Yes. If there was probable cause to arrest on the initial offense, failure to obey a lawful order, is there anything left to determine with respect to this established right to record? No, that would resolve the issue, right? Because if you had probable cause to arrest, that means they were engaged in unlawful conduct, and unlawful conduct is not protected by the First Amendment. And of course, probable cause— Has any court said that you have a right to continue to record while you were— Like, I'm just picturing when you're being arrested, the district court's like, I need you to give me your phone or your camera or whatever you're using to record. And you say, well, no, because I'm recording. He's like, right, but see, what I'm doing here is called arresting you. And when I arrest you, I need to take something out of your hand. And I'm just trying to figure out in the context of actually being arrested how there is still a First Amendment right to record, even assuming there's a First Amendment right to record, Jim. Well, right. Well, so what happened here is the first order to move was given solely explicitly to Kevin Halbert, and then there were subsequent repeated orders to move that were disobeyed. And Sergeant Pope effectuated this arrest for the failure to obey his orders. It wasn't until he had decided he was going to make the arrest that they began filming. And that's an issue that's never been decided either by this court recently in Sharp or by any other sister circuit. All sister circuit cases concerning this issue have looked at bystanders, people filming from a distance, the arrest or the interaction with law enforcement, or in some cases just a law enforcement building. I understand on one level the intuitive thing, but presumably the way that all these bystander cases arise is that the person who's not being arrested is recording. But the reason there ends up being a 1983 lawsuit is that at some point the officers tell the person recording to stop recording, at which point the person is not a bystander. They are now a person interacting with the cops. Correct. I'm just not sure how useful this bystander, not bystander distinction really is. I think it's very important because in those cases, they didn't have any involvement with law enforcement until they started filming. In this case, Kevin Halbert had been interacting with law enforcement for several minutes, actually if you count the first encounter, more than an hour before he took out his phone and began filming. So this case, I think, is factually distinguishable in such a way that it would not be clearly established in this circuit in February 2018 that that is a clearly established First Amendment right. I particularly think this court's decision in Sharp clarifies that because I know we've been discussing it, but there is a distinction between a bystander and a non-bystander, at least in this circuit now, when it comes to evaluating these sorts of issues. Court's indulgence. And to highlight one last thing, I only have a few seconds left. So up until this court's decision in Sismecki, which of course is unpublished and has no binding precedent, it nevertheless created a record for district judges in this circuit to reach different conclusions on this issue, further complicating whether or not it is a clearly established right. My time has run. I will reserve the rest for rebuttal. Thank you. All right. Thank you. Mr. Hansel? Thank you, Your Honor. Please proceed. Thank you, Your Honor. I'm anxious to reach the question, which I think this court should, of the right to film police, because it has become one of the last and best defenses for our civil rights. Before I do, and briefly, I'd like to touch on the fact that there was no probable cause to arrest here on any charge to address Judge Agee's question about the failure to obey. The failure to obey has to be of a lawful order. The order to move off of a public sidewalk in this circumstance was unlawful because of the facts and the case law that makes that clear the facts are. Let me tell you what my confusion or indecision is in this case, because as I read the district court's opinion in your brief, those seem to say that until there is a real-time safety hazard, a car is coming down the street and it's about to hit somebody in the sidewalk, then the factual issue is resolved and there would be probable cause. I don't think that that's what the law requires to establish a significant government interest. So in this case, unlike, say, right now outside between here and the Capitol, when it's daylight, it was dark, which I think everybody would agree accentuates the safety concerns. There had been people struck by vehicles there before. Others had complained about it. And I don't think you need expert witnesses to establish during the legislative session. Things can be pretty crowded. I've sat in this courtroom for a long time. Judge Wilkinson even longer. Judge Hyten's a little less. And all we have to do is look out the window when the legislature is in session, recess and out, there's a mass of humanity out there. And it just seems to me difficult to comprehend the district court's decision recognizing all those things, that you seem to want to require the officer to wait until there is an imminent danger. A car's coming down the street and about to hit someone in the crosswalk or they can't get onto the sidewalk. And then and only then do you have probable cause. Your Honor, the test is, and I agree with the court, it is not as high as the court enunciated. But the test is there must be a real non-conjectual threat. In other words, eight men standing alone, and they were alone, not in a crowd, on a sidewalk is not sufficient. The test is best found in the. Hundreds of people coming through there imminently to go into the legislative session. It's nighttime. Your Honor, if I may, there were not. At page 533 and 34, the record extract officer Pope himself testifies these men were alone. No one else was there. Officer Pope says they were not blocking. I don't think that's the point. You can be alone out there now. But shortly thereafter, this mass of humanity is going to be going up Capitol Hill to get there. And if indeed, Your Honor. There were any record evidence that that were the case. Defense would have cited it. There's none. That isn't, in fact, the case. I mean, I don't know who could contest the fact that when the legislature is in session, it's a mad scene out there. Not in the evenings, not at this time of day, not under these circumstances, not on this scene. The officer said there was no disturbance or disruption. The officer testified people could come and go freely. These are his exact quotes. The officer said no one was blocking traffic or creating any unsafe conditions. The officer said no one else was even present. The officer said he and others could move freely. These are pages 533, 34. You know, counsel, the whole purpose of qualified immunity is to afford a certain latitude of judgment. And judgment isn't always exercised in the same way. But the question is whether there was an exercise of judgment. It was a violation of whether there was a violation of clearly established law. And I think that the law around public forums and sidewalks and everything is pretty murky. And so the question is, did they act reasonably under the circumstances? As I understand it, the legislative session was shortly going to open. They wouldn't have been there with their signs unless they expected people to come and see them and see the signs. And as Judge Agee pointed out, it was dark. Traffic problems are more significant in the dark. And at this very location, pedestrians have been twice struck by vehicles within the past eight months. And what did the officers do? They didn't say, all right, fold up your signs and go home. They didn't say that. And they didn't arrest them for that. All they said was move back a few feet, maybe as many as 15. Move back to the lawyers' mall. Just say move back to a safer place. If that action denies qualified immunity, where are we? Because I realize that the protests here and the actions here didn't rise to the level of what happened in Michigan, where people were outside the chambers with guns, or Tennessee, where there was a disruption of the legislative process, or January 6th, where unfortunately I was a mob assaulting our own state capital, our own national capital. But there's a problem here. And the question is, in order to protect the sanctity of legislative proceedings, not to shut off protests, but just to exercise a little reasonable judgment of a fairly incremental and small nature, at least drastic needs, that, you know, if that doesn't warrant qualified immunity, then you've essentially handcuffed officers that are going to be facing in the future genuine questions of traffic safety and public safety and also questions about whether they can move anybody to even a few feet to a safer location. And where does that ultimately leave legislative sessions? Because there is a problem here. And the question is not to just let the police run wild. Nobody wants to do that. But to let them exercise a certain amount of judgment. And that's what qualified immunity protects. And when they say, you know, it protects all but the plainly incompetent and everything, these officers were not plainly incompetent. They took a modest step in response to a real problem, not a problem that they imagined or neither. This wasn't based on subjective criteria. It's based on the kind of congestion that can form around state legislatures. And also the objective factors that inform their view that this is a particularly hazardous location, or at least it has been. And if we deny them the ability to do even these small things, where does that leave us with a general problem that we're facing with respect to state legislatures? And this case will always stand as a block in the road to taking any kind of action, even the most modest and minimal and even action based on objective criteria. In other words, I just don't know where it leads. Your Honor, I think it leads right back to where the founders left us all, which is in a constitutional democracy where the police are handcuffed, not by the courts or anything I have done or my clients have done, but by our Constitution, which in this case would have required there to be a real articulable threat to safety. Our Constitution in the First Amendment is subject to reasonable time, place and manner restrictions. And the question is, was this a reasonable time, place and manner restriction? And when you're talking about reasonableness, qualified immunity is meant to preserve a certain small latitude, not wide open latitude, nobody wants to let the police run wild, but a certain small latitude of reasonable judgment in imposing a time, place and manner restriction. That's all that's at issue here. Your Honor, I see that my time is slipping away and I have many answers to the court's question, if I may. One is in connection with some of the issues that have already been raised. There is, in fact, record evidence before the court that the dispatcher told Pope, quote, someone had called on behalf of the lieutenant governor that the lieutenant governor wanted to move between two buildings, did not want to interact with some protesters and was requesting that Sergeant Pope do something about it. Sergeant Pope said in his deposition that he knew there was a call from the governor's mansion for him to go straighten these people out. That's in the joint record extract at 75. Pope talked about this was the only time he acted in connection with someone exercising their First Amendment rights on a call from the governor's mansion. That's in joint extract 526 and 71. Pope agreed, agreed that the public has a First Amendment right to film police officers in the conduct of their official duties. That's in joint record extract 541 and 542. When he was asked if this call, which which it clearly was, was the reason why people were asked to move. Is this against their constitutional rights? No, but the question is, independently, independently, was this an objectively verifiable action to take? Only if under the gate. You know, the traffic accidents don't have anything to do with the lieutenant governor's call. And the lateness of the hour doesn't have anything to do with the lieutenant governor's call. And in fact, you know, there are going to be people in a courthouse, there are going to be people in state legislature who are going to say to police officers, let's see if we can't pursue this in a safe manner. Judges would say that to just protect the safety of the public. But Mr. Pope said at joint record extract 86 and 87 that when he arrived, conditions were safe. And your honor, with respect to this question of of whether or not there were pedestrian accidents, Pope couldn't possibly have based any of his decision making on that because he didn't know about him. He was asked, are you aware of any pedestrians being hit the whole time you were with the Maryland Capitol Police? And Pope's answer was not that I'm aware of. So when he's standing there in real time making the arrest decision, which for Fourth Amendment purposes must be based on what he knows at the time and sees and observes, he didn't even know about these accidents. All of these various straw men that the defense is setting up are in fact counterfactual. Procedurally speaking, under Johnson, isn't the only question before us whether these disputes would be material or not? Do we even have to decide whether there's actually a genuine issue of material facts about these things? No. And I think it goes even further than that. Really, the only question before the court is, did the trial judge determine that these were material disputes? Because after all, it's a question of summary judgment and left to decide whether disputes are material. Yes, Your Honor. But in this case, then I agree with the court's analysis. Is there enough of a dispute? And certainly, where Pope himself, the officer, says conditions were safe, there were no crowds, no one was being impeded. All of the suppositions that I've been faced with here today just simply are undermined by the officer's own testimony when he says no one else was there. And there is no record evidence whatsoever, none, that anyone was about to be there or that the doors were going to be thrown open and crowds were going to come by. And in point of fact, that isn't how it happens in this portion of Annapolis because legislators have easier ways to get where they need to go. This is not a crowded sidewalk. Can I ask you about Sharpe? So Sharpe, on the one hand, is good for you, but on the other hand, it strikes me as bad for you. How can post-Sharpe you argue that there was a clearly established right to film in these circumstances? Because the vast majority of jurisdictions have so held. But the vast majority of jurisdictions aren't a published decision by this court. In light of Sharpe, how can you argue it was clearly established in this circuit? Let me read a quote from Sharpe that I think answers that question precisely. Quote, recording videos is entitled to First Amendment protection. Sharpe distinguished recording, which is entitled to First Amendment protection under Sharpe. That's the quote I've just read. It's a direct quote from live streaming. Sharpe said two things. Sharpe relied on the recording versus live streaming, which I agree is not germane here because there's no live streaming here. But it also relied on the bystander versus subject distinction, which is in play here. Why is that not a problem? Well, I think it relies more so on live streaming. Sure, it cites both of them. Agreed, agreed. To directly answer your question, the person filming was, in fact, in the position of a bystander. Sharpe involved a traffic stop where everyone was detained from the moment of the stop. So the person detained gets out of camera and starts live streaming while they're detained. That's not this case. The person filming was not detained. Someone else, happens to be his brother, was being arrested. The person filming is not a detainee in that circumstance. He is the bystander. And, therefore, he— Brother was the one who was filming. I'm sorry, Your Honor? Brother was the one who was filming. Well, they're both brothers of each other, Your Honor. One's being arrested, one's filming. Both arrested, right? Eventually, yes. And they were both arrested for refusing to get off the sidewalk. No. There was one arrest of one person who was refusing to get off the sidewalk. During that arrest, the other person begins to film an arrest. While still standing on the sidewalk. He was standing on the edge, but he had moved back. And so, he wasn't being given any further orders, and he was in the general mass of people who were moving away. And he's filming. He's not the— Arrested for failure to obey the officer's order or for something else? I think there is a factual dispute about why he was arrested because. No attention was paid to him. Nothing was done because of where he was standing. What did they write on the summons or whatever? The summons, of course, says failure to obey. And then they added all the other things. No, Your Honor. You can write anything you want on the summons, but people, sadly, in our country are arrested for things other than what the officers decided to charge them. Let me take a step back. Do you claim, or has any court ever held, there is a First Amendment right to continue filming while you are being arrested? Or, like a lot of things that are extinguished by being detained, that, like, once the officer says you're under arrest and he says, well, I need to keep filming, they're like, no, you don't understand. This is the part where I cuff you. This is the part where I take your hands and put them behind your back. You don't have the right to film while the officer is putting your hands behind your back, right? So in many – it's a difficult question to answer for this reason. It becomes somewhat metaphysical. Many of those cases involve wiretapping arrests. So someone is filming. The officer says this violates the wiretapping law, makes an arrest. In those cases, they keep filming. But, again, I'm talking about the, like, certainly an officer can – he was using a phone here, something like a phone, I assume? Yes. Okay. The officer can say you're not going to hold that phone in your hand because I'm placing you under arrest now. Correct. That doesn't violate the First Amendment. That's not what happened here? That would not violate the First Amendment. It would depend on the rest of the circumstances. If I arrest you for standing in a place that you're not allowed to be and it conceitedly has nothing to do with your First Amendment activity, it doesn't then violate the First Amendment to say you can't film while I'm arresting you. I understand the court – your Honor's point. I agree in theory. There are many caveats. That's my problem with the district court's reasoning on this. The district court says they violated – or there's a genuine issue of whether they violated his Fourth Amendment rights. And because there's a genuine issue whether they violated his Fourth Amendment rights, there's necessarily a dispute about whether they violated his First Amendment rights. And that seems definitely wrong to me. I'm here to argue the law, not the opinion of the court below, Your Honor. Okay, so you don't defend that, that because there's a Fourth Amendment violation, there's necessarily a First Amendment violation. I'm here to argue the law, Your Honor. And so the law, in my view, is that both were violated. Both were violated because there is a First Amendment right to film. Both First Amendment and Fourth Amendment. Yes, Your Honor. And the Fourth Amendment is violated because in the first instance, he's told to go out there and clear these people off the sidewalk. He admits being told that. That's what he goes out there to do. He gets out there, and then the defense says, based on things not in the record, there's a crowd coming. That's not in the record. There's no one else out there. And he freely admits there was no disturbance of the peace. He freely admits that they were doing nothing wrong. Therefore, he had no right to order them back. The 15 or 18 feet, whatever it was that he ordered them back, is relevant in this context, because it moves them back behind some large planters the size of these desks and to an area they're not likely to be visible. And it makes a fundamental and important difference. They were standing in an area, by the way, that they have stood in dozens of times before. The district court made a finding that there were adequate alternative places of expression. And I don't see how you can make that argument without saying the district court was clearly erroneous on that finding. Your Honor, again, I'm here to argue the reality of this case and not necessarily any particular view of it held by someone else. But, indeed, in this case, there's a clear violation of the Fourth Amendment because the order's not lawful to move unless there is a real non-conjectual threat, and that is under the Ross and Cass cases, the defense sites. There is no such threat here because, methodically, in the testimony, we walked through with the office for every possible thing that could have happened, and there is no record evidence here that there was about to be a crowd, that anyone was obstructed. These were eight people alone on a large, empty sidewalk with a crowd. You know, you're talking about these people as if they're in Siberia, but they're not in Siberia. They're right in front of a state legislature. I think it's in the evening. The legislature's about to open its proceedings or whatever, and you're saying that they can't do anything. In other words, you're reducing them to a complete position of powerlessness, and I think that that is contrary to what qualified immunity is designed to, which is to protect the exercise of reasonable judgment. Is this perfect judgment? It may not have been. Is it reasonable judgment, which is the question we have to ask? I think it could well have been. There's always some disputed issue of fact when you get one of these street scenes. I've never seen one of them where there isn't a street and a sidewalk, that there isn't some disputed fact. How many people were there? What were they doing? Where were they standing? All of that kind of thing. But the question is, given the fluidity of the circumstances, was the officers' judgment a transgression of clearly established law? But anyway, we've given you additional time. Go ahead and take 30 seconds and make a concluding statement. Thank you, Your Honor. There was clearly a violation of the First and Fourth Amendment here. It is unlawful to order people off of a public sidewalk, which was not in front of a legislative building, but in front of an area that's free and open called Lawyers Mall, almost half the size of a football field. It is clearly unlawful to order people exercising their First Amendment rights off of a public sidewalk when the officer recognizes no real and conjectural threat to public safety whatsoever, and later attempts to justify it with traffic accidents that he knew nothing about at the time. The question, we've been over and over this, the question is, as Judge Agee pointed out, could they reasonably anticipate that there may be some kind of traffic problem? And that's, at any rate, counsel, we appreciate your argument, but I think it's time at this point to conclude. All right? Thank you, Your Honor. All right. Counsel, you have some time for rebuttal. Thank you, Your Honor, and I'd like to start by discussing a case that was thoroughly briefed below and in this appeal, which was Cass v. The City of New York, which I think is a very strong and factually analogous case to the one that is before the Court now and highlights why judgment should be entered in favor of Sergeant Pope and the remaining claims pending against him. Cass involved an individual who was walking down a public sidewalk in New York, stopped on the sidewalk to engage with protesters who were in an immediately adjacent grassy area about the subject matter of their protest, and he was ordered to either move into the grassy area and continue his discussions or continue walking down the sidewalk. And he refused and refused and refused and refused. The person was eventually arrested under similar charges that were then later dismissed, but the Second Circuit, in reviewing that, was persuaded that the officers who were sued were entitled to qualified immunity in light of the numerous factors that they anticipated and expected and had nothing to do with the fact that he wasn't actually, at that moment, obstructing the sidewalk and he wasn't actually, at that moment, impeding vehicular traffic. It was what they anticipated and that they were permitted to guard against and protect against what they expected to be a threat to public safety. In Cass, there was one individual on a sidewalk, and here we have eight holding large signs. In Cass, it was 4.40 in the afternoon, and here it was already dark. It was in the 7 o'clock hour in February. What is the citation to that opinion? Cass, bear with me, Your Honor. The Second Circuit case. It is. I have it right here, H64F3200. That's the one. Thank you, Your Honor. What was it? H64F3200, Second Circuit, 2017. And unlike Cass, where this was just a public sidewalk, here we were under different circumstances. We were not only right outside the legislature right before it was set to open, so it was a particularly dangerous intersection, one that is cited, too, in Sergeant Pope's report. Regardless of what he may have testified two months later, he identified it in his report. And this court in Ross has said that when these sorts of time, place, and manner restrictions are put in place, you can appeal to common sense and logic. And common sense and logic tells us that the body of case law in this circuit and in others with similar circumstances, this was a reasonable time, place, and manner restriction on First Circuit. And the court was aired when it relied on this question of whether or not they were using the crosswalks, a fact that was not among Sergeant Pope's reasons for taking action in this case. I ask that this court remand with instructions for the district court to enter summary judgment in favor of Sergeant Pope on all remaining claims pending against him. And unless there are any other questions, I thank you for your time. Judge Hytens, do you have further questions? I do not. Judge Agee? Sir, I do not. All right.  We appreciate it. Thank you.
judges: J. Harvie Wilkinson III, G. Steven Agee, Toby J. Heytens